ARMSTRONG, CATOR & CO., APPELLANTS, VS. DANIEL P. HOLLAND, APPELLEE.

1. The purpose of the statute in reference to assignments for the benefit of creditors (Chapter 3891, laws of 1889) is to enforce the equitable rule of securing an equal distribution of the property of the asssignor among all his creditors, and this purpose being clearly equitable, should be pursued in good faith.

2. When an insolvent debtor has determined upon an assignment of his property under the statute for the benefit of his creditors, and in pursuance of such determination first secures one creditor by giving him a mortgage on property subject to assignment, and then executes an assignment of the same property for the benefit of all his creditors, both instruments will be considered as parts of one transaction, and if an equal distribution of the property among all the creditors is not thereby secured, it will be in violation of the statute and a fraud upon creditors.

WEINER, WRIGHT & WATKIN, APPELLANTS, VS. DANIEL P. HOLLAND, APPELLEE.

WEINER, WRIGHT & WATKIN, APPELLANTS, VS. DANIEL P. HOLLAND, APPELLEE.

Appeal from the Circuit Court for Duval county.

The facts in the case are stated in the opinion of the Court.

*R. H. Liggett*, for Appellants.

No Appearance for Appellee.

JANUARY TERM, 1895.        161

Armstrong, Cator & Co. v. Daniel P. Holland.—Opinion of Court.

MABRY, C. J.:

The above cases involve the same question, and the following opinion in the case of Armstrong, Cator & Co. vs. Daniel P. Holland will dispose of the other cases.

After the filing of a praecipe and the issuance of a summons in an action commenced by appellants against appellee, a writ of attachment was issued based upon affidavit and bond. The affidavit, made by an agent, states that the appellee was indebted to appellants in the sum of $950.00, actually due, and that affiant had reason to believe that appellee was fraudulently disposing of his property. There was a traverse of the affidavit and the issue thereby tendered was tried by the court without a jury, and after hearing the evidence introduced, a judgment was rendered dissolving the attachment and dismissing the suit.

To sustain the attachment appellants introduced a deed of assignment from appellee to Henry Robinson, bearing date January 16th, 1891, by which all the property of the assignor, both real and personal, and especially a certain mercantile business in the city of Jacksonville, was conveyed to the assignee in trust for the benefit of the creditors of the assignor in due *pro rata* proportion to their respective demands, and the assignee to be governed in all respects by the provisions of the statute regulating assignments for the benefit of creditors, being Chapter 3891, laws of Florida. The assignor filed his affidavit and the assignee executed a bond under the assignment. To further maintain the attachment, appellants introduced a chattel mortgage bearing date the 15th day of January, 1891, and executed by appellee to E. K. Hollinger and

11

Joseph E. Alexander on the same stock of goods described in the assignment to Robinson, the amount of the indebtedness to Hollinger secured by the mortgage being $4,000, and the amount due to Alexander $366.68, both evidenced by promissory notes, due one day after date.

The appellee was examined as a witness and testified that he executed the mortgage bearing date the 15th of January, 1891, took it to the clerk's office and had it recorded, and that E. K. Hollinger was not in the city of Jacksonville at the time and did not know of its execution until three days afterwards. He also stated that he determined to make the assignment on the 9th of January before the mortgage was executed. The debt due Alexander was for money borrowed to pay rent, and the Hollinger debt arose as follows: Witness, E. K. Hollinger and A. C. Hollinger were engaged in business in Jacksonville, and in January, 1888, witness and A. C. Hollinger bought out E. K. Hollinger and gave him their note for $4,000.00 payable on demand. Afterwards, in August, 1889, witness bought out A. C. Hollinger and assumed the payment of the four thousand dollar note, and on the 15th of January, 1891, took up said note and executed a new one which was secured by the mortgage of that date. About a year before that time witness promised E. K. Hollinger to secure him by mortgage on the stock of goods.

The testimony of appellants further showed that appellee was insolvent at the time he executed the mortgage, his liabilities amounting to more than double his assets.

On this testimony it is contended that the decision of the court dissolving the attachment and dismissing the suit was erroneous.

A statute in Maine provided that all assignments made by debtors for the benefit of their creditors shall provide for an equal distribution of all their estate, real and personal, among such of their creditors, as, after notice, become parties to such assignment, in proportion to the amount of their respective claims, excepting such property as was exempt.   The Supreme Court of that State, in the case of Berry vs. Cutts, 42 Maine, 445, after observing that the obvious intention of the statute was to secure an equal distribution of the effects of insolvent debtors, not exempt, among their creditors, in proportion to their claims, and the object to be attained being clearly equitable, should be pursued in good faith, said: "Any arrangement, by which an assigning debtor should so dispose of his property as that the assignment should not provide for the equal distribution of his estate, not exempt from attachment, among all his creditors, in proportion to their claims, would manifestly be in opposition to the letter and spirit of the statute.   Preferences in the act of assignment can not be given.   And it is equally in violation of the statute, if preferences are given in the transaction by which such distribution is effected, if the assignment constitutes a part of that transaction, though those preferences may not appear in the assignment itself. They may be shown by proof *aliunde.* The assignment must, in fact, as well as in form, provide for the equal distribution of the debtor's estate, not exempt from attachment, or there will not be a compliance with the requirements of the statute. When, therefore, a debtor, in contemplation of an assignment under this act, shall determine upon a distribution of his estate among his creditors, and, in execution of such contemplated assignment and determination, and for the purpose of giving a preference to

one class of creditors over another class, shall transfer to such preferred class distinct portions of his estate, and then assign the residue thereof to his general creditors, though the different instruments may not bear the same date, or be executed at the same point of time; if they are executed in pursuance of an original design, contemplated and determined upon in the beginning, they will be deemed in law one transaction; a transaction consisting of a series of acts, intended to produce one result, to-wit: the distribution of the debtor's estate among his creditors. If, therefore, the transaction, when fully executed, as originally contemplated and determined upon, does not make an equal distribution of such estate among all the creditors, in proportion to their claims, it is not in conformity with the statute, and must be deemed in fraud of its provisions, and void as to creditors." In this case mortgages and mortgage bills of sale were first executed to secure certain creditors and shortly thereafter a general assignment was made for the benefit of creditors, and it was held that the various instruments executed in pursuance of a determination to distribute the assignor's property among his creditors must be taken as parts of one transaction, and inasmuch as an equal distribution of the estate among all the creditors was not thereby secured, it must be treated as fraudulent and void.

Our statute, under which the present case arose, provides (sec. 1, Chapter 3891, laws of 1889), "that no assignment made for the benefit of creditors shall be valid in this State except the same shall be in writing and shall provide for an equal distribution of all the assignor's real, mixed and personal property, except such as is exempted by law from forced sale, among the several creditors of said assignor, in equal

proportion, according to their respective demands."
The manifest purpose of the statute is, in making as-
signments for the benefit of creditors, to enforce the
just and equitable rule of securing an equal distribu-
tion of the property of an insolvent debtor among all
his creditors, and we adopt the rule established by
many courts that when such debtor has determined
upon making an assignment of his property, under the
statute, for the benefit of creditors, and in pursuance
of such determination first secures some creditors by
giving them a mortgage on his property (subject to
assignment), and then executes an assignment of the
same property for the benefit of all creditors, both in-
struments must be considered as parts of one transac-
tion and if an equal distribution of the property
among all the creditors is not thereby secured, it will
be in violation of the statute and a fraud upon cred-
itors. Preston vs. Spaulding, 120 Ill. 208, 10 N. E.
Rep. 903; Holt vs. Bancroft, 30 Ala. 193; Perry vs.
Holden, 22 Pick. 269; Van Patten vs. Burr, 52 Iowa,
518, 3 N. W. Rep. 524; Perry vs. Vezina, 63 Iowa, 25,
18 N. W. Rep. 657; Gage vs. Parry, 69 Iowa, 605; 29
N. W. Rep. 822; Heineman vs. Hart, 55 Mich. 64, 20
N. W. Rep. 792; Kellogg vs. Root, 23 Fed. Rep. 525.

There are decisions the other way and they are
based upon the view that assignment statutes do not
undertake to deprive a debtor of the right to make
any disposition he pleases of his property so long as it
is under his dominion and no fraud is perpetrated.
Some decisions go to the extent of holding that after
an insolvent debtor has determined on a general as-
signment of his property under the statute for the
benefit of his creditors, he can still execute a mortgage
to some and thereby secure to them a preference be-
fore executing the assignment. Sampson vs. Shaw,

19 Mo. App. 274; Lake Shore Banking Co. vs. Fuller, 110 Penn. St. 157, 1 Atl. Rep. 731.

We do not hold that our assignment statute undertakes to deprive a debtor of the control and disposition of his property, if done in a proper way, but our view is that if a debtor has determined upon a general assignment of his property under the statute for the benefit of creditors, and, in pursuance of that determination, voluntarily mortgages his property to secure favored creditors, and then in the execution of the formed design to avail himself of the benefits of the statutes, makes a general assignment, it will draw to it, and in legal contemplation, embrace all prior acts of the debtor having for their object the voluntary transfer and disposition of his estate; and if preferences are shown to one creditor over another under such circumstances, it will be fraudulent under the statute. The testimony in the case before us, in our opinion, brings it within the principle announced.

The assignor, as stated by himself on the stand, determined upon an assignment of his property, and then, before executing the assignment, voluntarily made a mortgage on all his property, not exempt, in favor of a creditor not present and who knew nothing about it, and within twenty-four hours after having the mortgage recorded, the assignment is made and put upon record. The property mortgaged is the same as that included in the assignment and the assignor was at the time hopelessly insolvent.

The question of the validity of the mortgage or assignment is not directly involved here, and the only inquiry is whether the affiant, in the attachment affidavit, had reason to believe that appellee was fraudulently disposing of his property. Meinhard Bros. &

Co. vs. Lilienthal, 17 Fla. 501; Eckman & Vetsburg vs. Munnerlyn, 32 Fla. 367, 15 South. Rep. 922.

On the showing made, we think the court erred in holding that affiant did not have reason to believe that appellee was fraudulently disposing of his property, and in dissolving the attachment and dismissing the suit.

The judgment will be reversed, and it is so ordered.